DEMPSTER et al. v. COCHRAN.

(Circuit Court of Appeals, Third Circuit. December 6, 1909.)

No. 14.

1. PLEADING (§ 117*)—TRAVERSE—DENIAL.

Where, in an action for brokers' services, plaintiff's verified statement alleged defendants' indebtedness to amount to $14,382.45, from which defendants were entitled to a credit of $547.50, the amount remaining in plaintiff's hands of money advanced by defendants to purchase certain land, an affidavit of defense alleging that plaintiff received on defendants' behalf an amount largely in excess of the amount of money paid out by plaintiff on defendants' behalf did not constitute a direct or specific traverse of plaintiff's allegation as to the credit.

[Ed. Note.—For other cases, see Pleading, Dec. Dig. § 117.*]

2. WITNESSES (§ 269*)—CROSS-EXAMINATION—THEORY OF CAUSE—RELEVANCY.

Where, in a suit for brokers' commissions on an express contract, plaintiff was denied the right to give evidence on a quantum meruit, the court did not err in excluding the cross-examination of plaintiff as to the balance left in plaintiff's hands out of moneys advanced to him by defendants to purchase certain lands from previous owners under a contract distinct from that sued on.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 269.*]

3. BROKERS (§ 82*)—ACTION FOR SERVICES—ISSUES.

Where, in a suit for brokers' services, plaintiff's verified statement alleging that defendants were entitled to a credit of $547.50, while incorrect, was not specifically denied, the fact that plaintiff discovered a mistake on the trial and admitted that he owed defendants on an extraneous

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

account $808.67 more did not give defendants an additional right to extend the inquiry to cover such question.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 82.*]

4. APPEAL AND ERROR (§ 1057*)—REVIEW—HARMLESS ERROR—EVIDENCE.

In an action for brokers' services, the exclusion of a statement of the account showing an additional credit due from plaintiff to defendants and other extraneous transactions if error was harmless to defendants; plaintiff having admitted before the jury the amount of the additional credit as claimed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4197, 4198, 4205; Dec. Dig. § 1057.*]

5. BROKERS (§ 82*)—ACTION FOR COMMISSIONS—ISSUES—EVIDENCE.

Where, in a suit for brokers' commissions under an express contract, plaintiff claimed that he was to receive all of the selling price above $30 per acre, and defendants denied any contract for commissions, asserting that they employed plaintiff as an attorney only, they could not on the trial prove an express contract different from the one sued on, to wit, that they were to receive a net profit of 50 per cent. on the transaction.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 82.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Assumpsit by C. S. Cochran against Alexander Dempster and others. Judgment for plaintiff, and defendants bring error. Affirmed.

S. S. Mehard, for plaintiffs in error.

Thomas Patterson, for defendant in error.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

LANNING, Circuit Judge. This is an action in assumpsit brought by the plaintiff, the defendant in error here, against the defendants, Alexander Dempster, J. E. Barnes, and W. A. Edeburn, the first two of whom are the plaintiffs in error here, to recover a sum of money alleged to be due to the plaintiff as commissions for the sale of certain of the defendants' coal lands. By the statement of his claim the plaintiff declared on an express contract by which he averred he was to receive for his commissions all the selling price above $30 per acre. He also averred that the quantity of lands sold by him was 2,876.49 acres; that the selling price was $36 per acre; that, by a supplemental agreement, the defendants properly paid to one Williams $1 per acre for certain services rendered by him, and that the remaining $5 per acre over and above the $30 to be retained by the defendants, amounting to $14,382.45, was due to the plaintiff, less, however, a credit of $547.50, which, the plaintiff averred, was a sum remaining in his hands of moneys advanced to him by the defendants for the purchase of the lands from previous owners. The amount of the claim, therefore, according to plaintiff's statement, was the sum of $13,834.95, on which interest was also demanded from December 2, 1905, the date of sale by the plaintiff. The plaintiff's statement was verified by affidavit.

There is a rule of the Circuit Court for the Western District of Pennsylvania to the following effect:

"In all actions * * * of assumpsit the plaintiff's statement of claim may be verified by affidavit; and, if so verified, the defendant's affidavit of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

defense, or his affidavit in traverse thereof, shall be deemed and taken to be a pleading in the case, and upon trial no evidence on the part of the defendant shall be admitted in defense except such as may be alleged in his affidavit; and such items of claim and material averments of fact of the plaintiff's statement as are not directly and specifically traversed and denied by the defendant's affidavit shall be taken as admitted."

The defendants by their affidavit of defense, after stating that the plaintiff had been employed as their attorney in their negotiations for the purchase of the lands from the previous owners, and the nature of such services, declared that he "received large sums of money from Alexander Dempster and from others on behalf of said defendants, in connection with the transactions relating to the said coal lands, and that the amount of money which the plaintiff so received was largely in excess of the amount of moneys paid out by plaintiff on account of or on behalf of the defendants." There is no other allegation in the affidavit of defense that has any possible relation to the credit of $547.50 allowed in the plaintiff's statement. It is clear that such an allegation did not directly or specifically traverse or deny the averment of fact in plaintiff's statement that the correct credit was the sum of $547.50.

It appeared on the trial, however, that in the spring of 1907, a year before this action was commenced and more than a year and a half before the trial, the plaintiff had given to the defendants a statement of his account with them concerning the moneys advanced to him for the purchase of the coal lands, and also his bank books and returned checks, all which the defendants had retained in their possession, without disputing the correctness of the account, until the time of the trial. The statement was shown to the plaintiff on his cross-examination, and he then admitted that a further credit of $808.67 was due to the defendants. This reduced the amount demanded by him to the sum of $13,026.28, with interest from December 2, 1905, the date of sale, to December 10, 1908, the date of trial, being $15,384.04, for which a verdict was rendered. Owing to an application for a new trial, the entry of judgment was postponed until March 22, 1909, when judgment was entered, with accumulated interest, for the sum of $15,645.57.

The first question presented by the assignments of error is whether the trial court erred in excluding the cross-examination of the plaintiff as to the balance left in his hands out of moneys advanced to him by the defendants for the purchase of the lands from previous owners. The plaintiff was suing on an express contract for commissions. The record shows that, when he attempted to put in evidence on a quantum meruit, he was stopped by the court on the objection of the defendants' counsel that the plaintiff's statement of claim was "based wholly and solely upon a specific contract; there being no averment or allegation in the statement of claim of anything excepting a right to recover upon a special contract." It is true that in his statement the plaintiff had allowed a credit of $547.50, and that on the trial he had added to that credit the additional sum of $808.67, but these sums represented, according to the theory on which the action was brought, a balance due from the plaintiff to the defendants on an account wholly distinct and separate from the contract sued on. Moreover, the defendants had

been in possession of the plaintiff's statement of his account, which showed the additional credit of $808.67 for a year before the action was commenced. They knew, or were bound to know, that according to that account the credit of $547.50 in the statement of plaintiff's claim was incorrect. The averment as to the credit was a material averment, yet it was not "directly and specifically traversed and denied by the defendants' affidavit," as the rule of court required. They contented themselves with the general statement that the moneys received by the plaintiff had been "largely in excess" of the moneys paid out by him. In such circumstances, the defendants could not demand, as a matter of right, that they be permitted to inquire as to the correctness of the credit allowed by the plaintiff's statement of claim. Nor did the fact that the plaintiff discovered on the trial that he owed the defendants on this extraneous account $808.67 more than he had allowed in the statement of his claim invest the defendants with any additional rights of examination or inquiry. By not denying in their affidavit of defense the correctness of the credit allowed, they were excluded from the right to deny it on the trial.

The second question is: Did the trial court err in refusing to admit in evidence the statement of account, above referred to, which showed the additional balance of $808.67 due from the plaintiff to the defendants? The statement showed very much more than the mere fact that such an additional credit was due from the plaintiff to the defendants. It showed transactions with a large number of persons from whom 46 different tracts of land had been purchased, and to whom the plaintiff, as attorney for the defendants, had made purchase-money payments, as well as payments for taxes, surveys, recording fees, and other purposes. When the statement of account was shown to the plaintiff, he promptly admitted that the additional credit of $808.67 was due to the defendants, and it was allowed by him, his counsel declaring that the claim, instead of being $13,834.95 as shown by the plaintiff's statement, was $13,026.28, with interest from December 2, 1905. With that admission before the jury, the error in excluding the account, if any, was harmless.

The third and last question is whether the trial court erred in refusing to permit the defendants to show the cost of the coal lands to the defendants. This question arises from the fact that the plaintiff stated that in the interviews between him and the defendants leading up to the alleged contract for commissions the net price of $30 per acre to be realized by the defendants was suggested, because the average cost to the defendants was $20 per acre and they desired a profit of 50 per centum in the transaction. There was nothing in the plaintiff's testimony to indicate that the amount of his commissions was to be reduced in case the cost to the defendants exceeded $20 per acre. Nor in their affidavit of defense had the defendants presented any such defense. They denied absolutely that any express contract had been made for commissions. They asserted that the plaintiff was employed by them as an attorney at law to examine the titles to the tracts of land the purchase of which they were contemplating, to attend to the conveyances thereof, and to the proper payments of purchase moneys to the

grantors, that all the services of the plaintiff, including his services for the sale of the lands, were rendered by him in the course of his employment as their attorney, and that in the whole of his employment, from the beginning to the end, the only agreement they had with him was that implied by law, namely, that he was to receive a fair and reasonable compensation for his services. Having thus in their affidavit of defense denied the making of any express contract whatever, they were not in a position to offer evidence of an express contract different from the one sued on. When, therefore, they offered to show what the cost of the lands had been to the defendants for the purpose it must be presumed of proving that such cost with the addition of 50 per centum thereto exceeded $30 an acre, and thereby reduced the commissions to which the plaintiff was entitled, the offer was outside of the issue involved. Under the rule of the court, the affidavit of defense was deemed and taken to be a pleading in the case. It limited the defense under the only formal plea filed, which was non assumpsit, to the single issue as to whether the particular express contract sued on was or was not made. It follows that the court properly overruled the offer to prove an express contract different from the one sued on.

Upon the whole case, we are of opinion that the judgment of the Circuit Court should be affirmed, with costs; and it is so ordered.