THE FRED W. WOLF COMPANY, Appellant, v. HERMANN SAVINGS BANK et al, Respondents.

**Kansas City Court of Appeals, February 17, 1913.**

1. **EQUITY: Purchase Price: Personal Property.** When the purchase price of personal property is unpaid the intention of the parties to the contract of sale will be given controlling effect unless the property be of such nature that necessarily it becomes incorporated into the realty by the act and manner of annexation.

2. ———: **Conditional Sale: Prior Mortgage.** A conditional sale of machinery put into a plant covered by a prior mortgage, will be enforced in the face of the opposition of the mortgagee where such machinery may be removed without substantial injury to the freehold, or to the security the mortgagee had at the time such addition was made to the plant.

3. ———: ———: **Impairment of Security.** Conditional sales are given full effect as against the interest of prior mortgagees where by so doing the security of the mortgage is not diminshed.

4. **CONTRACTS: Sale of Real Estate: Foreclosure.** In contracts of sale of real estate by title bond a decree for the contract price and for foreclosure may be had.

Appeal from Gasconade Circuit Court.—*Hon. R. A. Breuer*, Judge.

REVERSED AND REMANDED.

*Scott, Bancroft & Stephens,* and *Robt. Walker* for appellant.

*J. W. Booth* and *August Meyer* for respondents.

JOHNSON, J.--This is an action in equity brought by the vendor of personal property to enforce a lien for the unpaid portion of the purchase price. The defendants are the Hermann Brewing Company, the vendee of the property, and the Hermann Savings

Bank. The real contest is between plaintiff and the bank and the principal point in issue is whether or not plaintiff is entitled to a lien as against the bank which claims to be the owner of the property. This issue was resolved by the circuit court in favor of the bank and the cause is here on the appeal of plaintiff.

The Kropp Brewing Company, a corporation, owned and operated a brewery in Hermann and became indebted to defendant bank in the sum of $12,000. It secured the payment of the indebtedness by a deed of trust on the land and improvements constituting the brewery plant and the deed of trust was duly recorded. Afterward the corporation changed its name to the Hermann Brewing Company and continued the business of operating the brewery. A part of the equipment of the brewery was the refrigerating machinery and, concluding that the successful prosecution of the business required the installation of new machinery in place of the old, the brewing company, without notice to the bank which still held the unsatisfied deed of trust, entered into a contract in writing with plaintiff, a manufacturer of such machinery, to install a new refrigerating plant in the brewery for $3580. The contract required plaintiff to furnish on board cars at Hermann "one refrigerating plant of twenty tons ice melting capacity daily consisting of the following machinery and material, all as hereinafter specified in detail." Then follows an enumeration and specification of the different parts of the machinery and appurtenances which in the aggregate constituted a complete refrigerating apparatus. The contract specified that "all foundations, masonry and carpenter work for compressors, engines, pumps, tanks, condensors, scaffolding, etc., and all holes for pipes to pass through walls or floors are to be made by the purchaser."

As we interpret the contract and understand the evidence the duty was imposed on the brewing com-

pany of preparing the place for the installation of the apparatus in a manner that would enable plaintiff to make the necessary emplacements and attachments without disturbing the soil or the buildings. In the work of preparation the brewing company removed the old machinery and put the foundations for the · engine, boiler, etc., in such condition that they could be and were fastened to their foundations by merely screwing nuts on imbedded bolts and the apparatus was connected with the remainder of the brewing plant by screwing pipe ends together. In short the installation was so made that the apparatus could be detached by unscrewing some nuts and pipes and removed from the premises without changing or disturbing the condition they were in at the installation of the new apparatus.

The contract provided that "all property rights in this plant shall remain in us (the vendor) until after all money payable hereunder shall have been paid to us in cash." The contract was duly executed and acknowledged by the brewing company and was filed for record in the office of the recorder of deeds. Afterwards the machinery was delivered by plaintiff and placed in the brewery. The brewing company made payments on the purchase price reducing the indebtedness to about $600, and then made an assignment for the benefit of creditors. Later the brewery was sold under the deed of trust held by the bank and the bank became the purchaser at that sale.

The assets of the brewing company have been distributed among its creditors and plaintiff received $106.06 from the assignee on its demand. The present suit is to enforce the remainder of the debt as a lien on the refrigerating plant. The bank claiming that the property when installed in the brewery became a part of the realty covered by the deed of trust denies the right of plaintiff to such lien.

We do not understand plaintiff as claiming a right to a lien under the mechanic's lien statutes but as

founding the right on the terms and provisions of a conditional sales contract, i. e., a contract in which the vendor of personal property reserves title in himself until the payment in full of the purchase price. The mutual intent of plaintiff and the brewing company to enter into a contract for a conditional sale not only is clearly expressed in the contract of sale but also is manifested by a careful observance of all the requirements of the statutes relating to such contracts. The contract was acknowledged and recorded as provided in cases of mortgages of personal property for the purpose of giving notice to subsequent purchasers and creditors of the vendee. So far as the mutual intention of the contracting parties may be allowed to control the interpretation of the contract and the ascertainment and enforcement of the respective rights and duties of the parties thereunder, the contract should be regarded as one that, between the parties, preserved the character of the property as personalty and reserved the title in the vendor as long as any part of the purchase price should remain unpaid.

And in such cases the intention of the parties to the contract will be given controlling effect unless the property be of such nature that necessarily it becomes incorporated into the realty by the act and manner of annexation. "Thus if, in the course of constructing a house, brick should be placed in the walls, and joists and beams in their proper places, the brickmaker and sawyer would not be permitted to despoil the house by asserting an agreement with the owner that the brick and beams were to retain their character as personalty, notwithstanding their annexation." [Patton v. Phoenix Brick Co., 150 S. W. 1116, 167 Mo. App. 8.]

But we said further in the case just cited: "When chattels are of such a character as to retain their identity and distinctive characteristics after the an-

nexation, and do not thereby become an essential part of the building, so that the removal of the chattels will not materially injure the building, or destroy or unnecessarily impair the value of the chattels, a mutual agreement in respect to the manner in which the chattels shall be regarded after annexation will have the effect to preserve the personal character of the property between the parties to the agreement. Accordingly, the proposition is well sustained that one who purchases machinery with a view that it shall be annexed to or placed in a building of which he is the owner, and who executes a chattel mortgage on the property so purchased, thereby evinces his intention that the property shall retain its character as personalty, regardless of the manner in which it may be annexed to the freehold.'' [Binkley v. Forkner, 117 Ind. 176, 19 N. E. 753, 3 L. R. A. 33.] The same rule is announced substantially in Edwards & Bradford Lumber Co. v. Rank, 57 Neb. 323, 77 N. W. 765, 73 Am. St. Rep. 514.

Applying this rule we do not hesitate in saying that since the annexation in the present case was not of a character either to destroy or impair the identity of the refrigerating apparatus, and since its removal from the brewery could be made without appreciable change or alteration in the condition of the realty obtaining at the time of its installation, we perceive no reason for pronouncing ineffective the clearly and unequivocally expressed intention of the parties that the title of the machinery should remain in the vendor until payment of the purchase price and that there should be no conversion of the property from personalty to realty. Such being the character of the transaction as between the original parties we do not think the defendant bank which stands in the position of the holder of a prior mortgage has any ground on which to base its assertion that as to its interest the machinery must be treated as realty. The rule now generally

recognized is that a conditional sale of machinery put' into a plant covered by a prior mortgage will be enforced in face of the opposition of the mortgagee where such machinery may be removed without substantial injury to the freehold or, to express it differently, without substantial injury to the security the mortgagee had at the time of such addition to the plant. [Insurance Co. v. George, 79 N. W. (Minn.) 1028; Woods v. Manufacturing Co., 13 So. Rep. 948; Manufacturing Co. v. Water Co., 48 Fed. 879; United States v. Railroad, 12 Wall. 362; Warren v. Liddell, 20 So. Rep. 89.]    We quote with approval the following excerpt from the first of the cases cited:

"The title to the property, then, not having been devested by the terms of the contract, nor by the performance of the terms thereof, as between the parties, the question arises as to the rights of the plaintiff mortgagee as against the rights of the defendant George, the assignee of the rights of the Hercules Ice-Machine Company. Appellant claims that George cannot legally remove the machinery without consent of the mortgagee. Why not? It was not there when plaintiff loaned its money and took security on the premises for its repayment. It was not there when the fifteen ton plant was installed in place of the natural refrigerating system. It was not installed in the building until several years after the date of the mortgagee's loan on the premises. It parted with no security or consideration on the faith that this sixty-ton plant would be installed or remain there. It is not an innocent holder of a mortgage, taken without notice, upon land to which the owner had affixed property, personal in its character, before the execution of the mortgage. It has no equities which it can invoke in its favor, for the installation of the fifteen-ton plant added materially to the value of the security which it took when it loaned the money to Patterson in the first instance. The question, then, is purely one

of law, viz., which has the superior rights, the plaintiff or the defendant George? At the time when the sixty-ton plant was installed in the building, the Thurston Company reserved the right to remove the machinery in case of nonpayment of the purchase money. There is no pretense that such money has been paid, and there is no contention but what the Thurston Company agreed that the Hercules Company might remove the property in case of nonpayment of the purchase price of the machinery. In the case of Bank v. Stanton, 55 Minn. 211, 56 N. W. 821, this court held that, where buildings are erected by one having no interest in the land on which they stand, an agreement will be implied that the buildings shall remain the personal property of him who erects them,—especially in the absence of any other facts or circumstances tending to show a different intention,—and that, where the land is subject to a mortgage, if the agreement of the mortgagor in possession and the party erecting the building was that it should remain the personal property of the latter, the absence of a concurrent agreement on the part of the mortgagee to the same effect will not, of itself, make the building a part of the mortgage security. It seems to us that the rule here laid down controls the case at bar. There can be no material distinctions between a building apparently affixed to the land, and that of a refrigerating plant so affixed.''

Why should the defendant bank be allowed to ignore the rights the contract guaranteed to plaintiff and to appropriate property the title to which never passed to the brewing company, the mortgagor? The bank did not lend its money on the security of plaintiff's property; the installation of that property, instead of injuring the bank's security, benefited it to the extent of the payments made by the brewing company on the purchase price, the usefulness of the old refrigerating apparatus had come to

an end and its replacement had become a necessity
to the preservation and conservation of the bank's
security and it would seem that to allow the bank to
keep this property as freed from plaintiff's claim
would be to give one man's property to another in de-
fiance of the plainest demands of reason and justice.
The tendency of the modern decisions is to give full
effect to conditional sales as against the interests of
prior mortgagees where by so doing the security of the
mortgage is not diminished. (13 Am. & Eng. Ency. of
Law (2 Ed.), 630; Campbell v. Roddy, 44 N. J. Eq.
244; Binkley v. Forkner, 117 Ind. 185; Hurzthal v.
Hurxthal, 32 S. E. Rep. 237) and to adjust the rights
of the parties on equitable principles even in instan-
ces where the severance and removal of the machinery
might impair the security of a prior mortgagee to
some extent. The old rule that whatever is annexed
to the freehold becomes a part of it has been greatly
relaxed to meet the exigencies of modern trade and
industry.

We conclude that as between plaintiff and de-
fendant bank the title to the refrigerating system
remained in plaintiff and that plaintiff had the option
of pursuing its remedy at law for the recovery of
the property, or, treating the unpaid purchase price
as a lien on the property, might sue in equity for the
enforcement of the lien. [Hollenburg Music Co. v.
Morris, 35 S. W. 396; Campbell Co. v. Powell, 14 S.
W. Rep. 245; In re National Cash Register Co., 174
Fed. 587; 35 Cyc. 708; Woods Mfg. Co., 13 So. 948;
Westinghouse Co. v. Railroad, 76 Atlantic, 897; 2 Story
Eq. Jur., sec. 1216.]

As is said in Hollenburg v. Music Co., supra:
"Apart from the statutes, there is no essential dif-
ference in such sales of personal property and of
real estate. The rights and remedies of the parties
are similar in both cases. [Tied. Sales, sec. 249.] It
is well settled that in contracts of sale of real estate

by title bond a decree for the contract price and for foreclosure may be had. [Jones, Mort. (5 Ed.), sec. 1449.] Equity certainly favors that remedy which inflicts the least hardship on the debtor. We, therefore, conclude that plaintiff could proceed by foreclosure on the piano for the balance due, and was not confined, if it were permissible under the facts of this case, to a judgment for the specific property.''

The judgment is reversed and the cause remanded with directions to enter judgment for plaintiff in accordance with the views expressed. All concur.