ELIZABETH NACE HOLTGREVE, LAURA E. CAMPBELL and WILLIAM RANKIN v. HELENA BOEHM SOBOLEWSKI and R. E. SOBOLEWSKI, Appellants.—31 S. W. (2d) 993.

Division Two, October 13, 1930.

*Fry & Hollingsworth* and *Marion S. Francis* for appellant.

*B. F. Jones, E. C. Kennen* and *Kenneth G. Kennen* for respondent.

HENWOOD, C.—Plaintiffs filed their petition in two counts, alleging, in the first count, a cause of action in ejectment, and, in the second count, grounds for an order restraining defendants from interfering with the cultivation of the land described in their petition and from removing from said land the dwelling house located thereon. A temporary restraining order was issued. In their answer, defendants deny the allegations contained in both counts of the petition, and, as grounds for affirmative relief, allege that, in March, 1923, the defendant Helena Boehm Sobolewski, then Helena Boehm, a widow, owned the land described in plaintiffs' petition; that, on March 6, 1923, she executed and delivered to Robert P. Price, as trustee, a deed of trust on said land, to secure the payment of her promissory notes payable to the order of the O'Hara Farm Mortgage Company; that, in 1924, she and the defendant R. E. Sobolewski were married; that, shortly after their marriage, the defendant R. E. Sobolewski built the dwelling house on said land, and paid for the same out of his own funds, in pursuance of a contract between the defendants whereby it was agreed that said dwelling house should remain, at all times, the personal property of the defendant

R. E. Sobolewski, and that he should have the right, at any time, to remove said dwelling house from said land, free from any claim to the title to said dwelling house on her part or on the part of any person or persons claiming under or through her; that, on February 5, 1927, plaintiffs, as the holders of said promissory notes, caused said land to be sold under the terms of said deed of trust, and became the purchasers of said land at said sale; that, prior to said sale, plaintiffs were given due notice of the rights of the defendant R. E. Sobolewski in said dwelling house, and, at the time of said sale, knew of his claim to the title thereto; and that, after said sale, plaintiffs, by claiming the title to said dwelling house, obtained the temporary order restraining defendants from removing said dwelling house from said land; and defendants pray that said temporary restraining order be dissolved; that the title to said dwelling house be adjudged to be in the defendant R. E. Sobolewski; and that he be given the right to remove said dwelling house from said land. Plaintiffs reply is a general denial.

After hearing the case on the merits, the trial court found for plaintiffs on both counts of their petition, and against defendants on the affirmative defense pleaded in their answer; that plaintiffs are entitled to the possession of the land described in their petition, and damages in the sum of one cent for the wrongful detention thereof, and twenty-five dollars per month as the reasonable rental value thereof; and, in accordance with said findings, adjudged that plaintiffs have and recover the possession of said land, and damages in the sum of one cent, and twenty-five dollars per month from the —— day of March, 1927, to the day possession of said land is given to them; and that a writ of possession issue; and that the temporary restraining order issued against defendants remain in force until the execution of the writ of possession. Defendants have, in due course, perfected an appeal to this court.

In their case in chief, plaintiffs put in evidence certain pages of the deed records of Audrain County, showing the trustee's deed under which the defendant Helena Boehm Sobolewski, then Helena Boehm, acquired the title to the land described in plaintiffs' petition, in 1913, and the deed of trust on said land which she executed and delivered to Robert P. Price, as trustee, in March, 1923, and the trustee's deed executed by Robert P. Price on February 5, 1927, under which plaintiffs acquired the title to said land.

J. R. Van Vacter, a neighbor of the Sobolewskis, testified: The fair monthly value of Mrs. Sobolewski's farm, including the dwelling house and other improvements, is three dollars per acre. About the first of February, 1927, shortly before the foreclosure sale, Mrs. Sobolewski wanted to buy an acre of his land, "just across the road from their house." She said "they were afraid they might lose the house when the land was sold."

Ralph Luton testified: He lived about three quarters of a mile from Mrs. Sobolewski's farm. After the foreclosure sale, the Sobolewskis wanted to buy an acre of his land. They said they wanted "to move the house on it."

K. G. Kennen, one of plaintiffs' attorneys, testified: After being retained by plaintiffs, and a day or two before the filing of this suit, he went to Mrs. Sobolewski's farm, and "demanded of her in the name of and for the plaintiffs immediate possession of the farm." She refused to give possession. On cross-examination, he said: "Mrs. Sobolewski has never intimated to me in any way that the house belonged to Mr. Sobolewski. She never in any way intimated that Mr. Sobolewski had any separate personal interest in the house." He further said that his only conversation with Mrs. Sobolewski concerning this matter occurred on the day he demanded possession of the farm; that he did not talk to Mr. Sobolewski on that day; and that he "made no demand on Mr. Sobolewski for delivery of possession of the house."

The evidence adduced by defendants is substantially as follows: In 1913, the defendant Helena Boehm Sobolewski, then Helena Boehm, a widow, acquired title to 140 acres of land in Audrain County, the same being the land described in plaintiffs' petition. In March, 1923, she executed and delivered to Robert P. Price, as trustee, a deed of trust on said land, to secure the payment of her promissory notes payable to the O'Hara Farm Mortgage Company. In August, 1924, she was married to the defendant R. E. Sobolewski. She was then living in the granary located on said land, there being no dwelling house thereon. At the time of their marriage, Mr. Sobolewski had about $2,000 in cash and owned a farm of 90 acres near Vandalia, in Audrain County. After she and Mr. Sobolewski had discussed the matter of building a dwelling house on said land for sometime, he made a written offer to her which reads as follows:

"Laddonia, Mo., Oct. 27, 1924.

"MRS. HELENA L. BOEHM now SOBOLEWSKI:

"I will build the House on ground or Farm or land this agreement, that the House Will and must remain at all times as my Personal property and at no time let it Ever Enter In your mind that the House is yours, under these conditions my Dear I will Erect the House or Build It, to this agreement.

"And you will have no right In anny way to object to my plans. none, what ever.

"Should I wont to move or sell or dispose of the House. In any waye Shape or form, In order to retain my loss, you shall have only this right my dear to live in It.

"Providing we get alon nicely together. Now if you see fit to sing up to this agreement, I will build House, than sign here.

"MRS. HELENA L. BOEHM now SOBOLEWSKI."

She accepted his offer by signing her name thereto, and thereafter, the contract was kept in a tin box in the writing desk at their home. After she signed the contract, Mr. Sobolewski built the frame dwelling house on said land, of eight rooms and one and one-half stories in height, with a concrete basement, and paid for the construction of the house and the materials used therein with the $2,000 which he had in cash at the time of their marriage and with the $2,200 which he obtained as a loan on his farm. Before the house was built, plaintiffs purchased the promissory notes which were secured by the deed of trust on Mrs. Sobolewski's land. Sometime after the house was built, William Rankin, one of the plaintiffs, wrote a letter to Mrs. Sobolewski, in which he inquired as to when the taxes on her farm were paid, as to whether she or the O'Hara Farm Mortgage Company had built the dwelling house thereon, as to whether she lived on the farm, and as to whether there were any mechanics' liens on the dwelling house or other outbuildings. In reply, Mrs. Sobolewski advised Mr. Rankin that Mr. Sobolewski built the house on her farm. She also wrote a letter to Mr. Jones, attorney for plaintiffs, in which she advised him that Mr. Sobolewski had spent more than $4,000 in building fences, concrete work, and a house on her farm since their marriage. On November 5, 1926, Mr. Rankin and Mr. Jones came to Audrain County and found Mr. and Mrs. Sobolewski at a coal mine, where they discussed the matter of renewing the loan on Mrs. Sobolewski's farm. Mr. and Mrs. Sobolewski both testified that no agreement was made at that time or at any other time for a renewal of the loan. Mrs. Sobolewski further testified that, in the conversation with Mr. Rankin and Mr. Jones at the coal mine, Mr. Solobewski "spoke up and said he put the house there;" that, after some discussion concerning the renewal of her loan, Mr. Rankin and Mr. Jones "promised" to see her and Mr. Sobolewski at their home that afternoon, but "they never showed up;" and that, about a week later, she received a letter from Mr. Jones in which he was "trying to force" her and Mr. Sobolewski "to sign some agreement where there wasn't no agreement." On cross-examination, she said that, after Mr. Jones returned to Keokuk, he wrote to her, advising that he had sent some papers to Mr. Scott at Mexico and suggesting that she and Mr. Sobolewski go to Mexico and sign the papers; that, at first, she replied, saying she would go to Mexico and see Mr. Scott, but, after she learned what the proposal was, she did not accept it because she "could do better otherwise and wanted to do better;" and that Mr. Jones "wrote" her that he had insured the house on behalf of plaintiffs, and, when she told Mr.

Sobolewski, he said: "Well, I like his nerve, to insure other people's property." When asked if she "wrote" Mr. Jones that plaintiffs had no interest in the house and no right to insure it, she said: "I don't remember." On cross-examination, Mr. Sobolewski said the purpose of his letter to Mr. Jones, dated January 1, 1927, was to prevent plaintiffs from foreclosing the deed of trust on Mrs. Sobolewski's farm. He further said: "We told them we had some money and in February she would have the sale and pay them more, but they wouldn't wait, they sold her out." Not long after the conversation at the coal mine, Mrs. Sobolewski received a letter from Paul H. Holtgreve, attorney for Elizabeth Nace Holtgreve, one of the plaintiffs, relating to the loan on her farm. In replying to his letter, Mrs. Sobolewski advised him that there was no dwelling house on her farm when the loan was made, and that she was living in the granary prior to her marriage to Mr. Sobolewski. On January 1, 1927, Mr. Sobolewski wrote the following letter to Mr. Jones, attorney for plaintiffs:

"Laddonia, Mo., Jan. 1, 1927.

"Mr. B. F. Jones, Keokuk, Iowa.

"Dear Sir: I have just red your letter of the 22 last month over she has wrote you that my 2 boys nor I will not sine over the 90 acres farm. She and her Atty wrote you that you had good curity on her farm which you have since I built the House. I have seen my Aturney will put in my claim which I have in her farm If the place is sold under the trust Deed let me hear from you by return mail. Yours truly, Rudolph E. Sobolewski."

On January 29, 1927, W. H. Logan, as attorney for Mr. Sobolewski, wrote the following letter to Elizabeth Nace Holtgreve, one of the plaintiffs:

"Laddonia, Mo., Jan. 29, 1927.

"To Mrs. Elizabeth Nace Holtgreve,

"Peoria, Illinois.

"In relation to a certain deed of trust which you and others hold against 140 acres of land being the north 140 acres off the east half of Section 10, Township 52, Range Seven (7), Audrain County, Missouri. Which land I understand that you are seeking to sell under said Deed of Trust.

"Now, take notice that I have recently furnished the money for the building of a new house on said land at a cost of $4000 and that thereby I claim an Equitable interest in said land and that I fully intend to bring a suit in the Circuit Court of Audrain County, Missouri in Equity for said $4000 and interest on same.

"Richard Sobolewski,

"By W. H. Logan, Attorney."

On January 31, 1927, W. H. Logan, as attorney for Mr. Sobolewski, wrote the following letter to Laura E. Campbell, one of the plaintiffs:

"Laddonia, Mo., Jan. 31, 1927.

"Mrs. George A. Campbell,
"Danville, Illinois,
"Dear Mrs. Campbell:

"In relation to a note secured by deed of trust on the North 140 acres off of the east half of Section 10, Township 52, Range Seven, Audrain County, Missouri, belonging to Helena L. Boehm Sobolewski of Laddonia, Missouri.

"Take notice that I have recently furnished the money to build a fine house on this land and that I claim an Equitable lien on it for my money regardless of your deed of trust. There was no house on it when you took the mortgage.

"I shall file a suit in equity to enforce my lien for the money I advanced for this building.

"RUDOLPH SOBOLEWSKI,
"By W. H. LOGAN, Attorney.
"W. H. LOGAN (Sgd.)"

There was no renewal of the loan on Mrs. Sobolewski's farm, and, on February 5, 1927, her farm was sold under the terms of the deed of trust thereon, and plaintiffs were the purchasers of her farm at said sale. In connection with the cross-examination of Mrs. Sobolewski, plaintiffs put in evidence a letter, dated February 21, 1927, from Mr. Logan to Mr. Jones, in which Mr. Logan said: "Mrs. Boehm will move out on the first day of March, 1927, if you will give her $500." Mrs. Sobolewski was asked, but did not say, whether or not she authorized Mr. Logan to write this letter. She did say that Mr. Sobolewski was "sick in bed" at that time, and that she "didn't show him any letters" or "speak to him about no business whatever."

In rebuttal for plaintiffs, William Rankin testified: He lived in Keokuk, Iowa, and was one of the purchasers of the promissory notes given to the O'Hara Farm Mortgage Company by Mrs. Sobolewski at the time she obtained the loan on her farm. In November, 1926, he and Mr. Jones, attorney for plaintiffs, went to Audrain County and talked to Mr. and Mrs. Sobolewski, at a coal mine, concerning a renewal of the loan on her farm. "Mrs. Sobolewski did most of the talking." She asked for more time on her loan, and, when asked what value she put on her farm since the house was built, she said she thought it ought to be worth $20,000 and that "we had ample security." Mr. Sobolewski did not say anything about increased security on account of the house being on the farm. He said he did a great deal of work on the house, but said nothing about being the owner of the house. It was brought out

in the course of the conversation that Mr. Sobolewski owned a farm near Vandalia, and he directed the witness and Mr. Jones as to how they could find his farm. And, after considerable discussion of the matter, it was agreed that plaintiffs would renew the loan on Mrs. Sobolewski's farm and that Mr. Sobolewski would give plaintiffs a deed of trust on his farm as additional security.

B. F. Jones testified: He lived in Keokuk, Iowa, where he practiced law, and that he is one of the attorneys for plaintiffs. He accompanied Mr. Rankin on the trip to Audrain County in November, 1926, and participated in the conversation with Mr. and Mrs. Sobolewski, at the coal mine, as attorney for plaintiffs. Mrs. Sobolewski said: "That farm is worth $20,000; since we built the house the security is a good deal better than when they took the mortgage, the O'Hara people." He asked Mr. Sobolewski what property he had, and Mr. Sobolewski replied that he had a farm of ninety acres, with an encumbrance of $2,200 against it. Mr. Sobolewski described his farm and directed the witness and Mr. Rankin as to how they could find it. The witness told Mr. and Mrs. Sobolewski that he and Mr. Rankin would look at Mr. Sobolewski's farm, and, if it looked "good," plaintiffs would renew the loan on Mrs. Sobolewski's farm and take a deed of trust on Mr. Sobolewski's farm as additional security. Both Mr. and Mrs. Sobolewski said "that would be all right," and he told them he would write them about the matter when he returned to his home in Keokuk. After he and Mr. Rankin inspected Mr. Sobolewski's farm, they drove to Mexico, in Audrain County, and looked up the title records of both farms. After he returned to Keokuk, he prepared the trust deeds to be executed by Mr. and Mrs. Sobolewski, according to the arrangement effected at the coal mine, and forwarded the same to Mr. Scott, an abstracter of titles at Mexico, with whom he had arranged, while in Mexico, for necessary additions to the abstracts of title and for the taking of the acknowledgments of Mr. and Mrs. Sobolewski to the deeds of trust. At the same time he wrote to Mr. and Mrs. Sobolewski, and told them to go to Mr. Scott's office and execute the trust deeds. At first, Mrs. Sobolewski replied to his letter, saying that Mr. Sobolewski was sick and unable to go to Mexico; and, later, she wrote another letter, saying that she had never agreed to the arrangement proposed by him. After that, he received a letter from Mr. Logan, attorney for Mrs. Sobolewski, in which he said that the "security was ample," and suggested that plaintiffs "ought to be satisfied." In the conversation at the coal mine, Mr. Sobolewski made no claim that the house on Mrs. Sobolewski's farm belonged to him as his personal property. The first notice he had of such a claim was when he received Mr. Sobolewski's letter, dated January 1, 1927. On cross-examination, he admitted that, before he received Mr. Sobolewski's letter, dated January 1, 1927, he had learned through

other letters that Mr. Sobolewski's money "had gone into the house;" and that, after he received Mr. Sobolewski's letter, dated January 1, 1927, he made no investigation of Mr. Sobolewski's claim to the house. On further cross-examination, he said that Mr. Sobolewski told him and Mr. Rankin at the coal mine that "he had done most of the labor on the house for his wife," and that "he had built the house for his wife and that it increased the security and we ought to be satisfied."

R. B. Price testified that he was named as trustee in the deed of trust given by Helena Boehm, for the use of the O'Hara Farm Mortgage Company, to secure the loan on her farm; that, at the request of the holders of the notes, he sold her farm "in foreclosure of the deed of trust;" and that, at the time of the sale, no notice was given to him, nor "publicly," as to any claim by Mr. Sobolewski to any part of the property.

Plaintiffs' evidence in rebuttal further shows that, on February 20, 1925, defendants executed a deed of trust on Mr. Sobolewski's farm to secure the payment of their promissory note in the sum of $2200; and that, on August 25, 1925, they executed another deed of trust on Mr. Sobolewski's farm to secure the payment of their promissory note in the sum of $679.08.

Other pertinent evidence will be noted in the further discussion of the case.

Under the pleadings, this is an equity case. It was so considered by the trial court, and will be so considered by this court. In other words, we will consider the case *de novo*.

Did plaintiffs, as purchasers of the land described in their petition, become the owners of the dwelling house located thereon, or is the defendant R. E. Sobolewski the owner of the house by virtue of a contract between him and the defendant Helena Boehm Sobolewski, who owned the land at the time the house was built? Under the evidence, this was the only issue presented to the trial court, and it is the only issue for determination by this court.

It is undisputed that, in 1913, the defendant Helena Boehm Sobolewski then Helena Boehm, acquired the title to the land; that, in 1923, she gave the O'Hara Farm Mortgage Company a deed of trust covering the land, to secure the payment of a loan evidenced by her promissory notes; that plaintiffs purchased these notes prior to the time the house was built; and that plaintiffs, as the holders of these notes, caused the land to be sold under the terms of the deed of trust on February 5, 1927, and purchased the land at the foreclosure sale. And it appears from the testimony of defendants, that they were married in August, 1924; that, for awhile after their marriage, they lived in the granary on Mrs. Sobolewski's farm; that she told Mr. Sobolewski about the encumbrance on her farm; that his offer

to build a house on her farm was discussed for sometime; that, at first, they had a verbal contract, but, before Mr. Sobolewski started to build the house, "he wanted it in writing;" that, on October 27, 1924, they entered into the written contract above quoted, whereby it was agreed, in substance and effect, that he would build a house on her farm for their joint use and occupancy, as long as they got along "nicely together," and that the house would be and remain his personal property at all times, and that he would have the right "to move or sell or dispose" of the house at any time; that, in pursuance of this contract, the house was built in the latter part of 1924 and the early part of 1925, at a cost of $4,000 or more, and Mr. Sobolewski paid "every bit of the money that went into the house" with $2,000 which he had in cash and $2,200 which he obtained as a loan on his farm, and he and Mrs. Sobolewski had occupied the house as their home ever since it was built; that they made no agreement with plaintiffs for a renewal of the loan on Mrs. Sobolewski's farm; and that, prior to the foreclosure sale, plaintiffs were advised that the house was built by Mr. Sobolewski with his own money, and that he would "put in" his claim and file a suit in equity to enforce his claim if the farm was sold under the deed of trust.

Plaintiffs rely on the general rule that whatever is annexed to the freehold becomes a part of it. And, in support of the claim that the house is a part of the realty purchased by them, they contend that certain acts and statements of defendants prior to the foreclosure sale were inconsistent with the existence of the alleged contract between defendants, and that the alleged contract was "a mere afterthought" on the part of defendants; and they further contend that they had no notice, prior to the foreclosure sale, that Mr. Sobolewski claimed the house as his personal property. We do not agree with plaintiffs in either of these contentions.

It will be noted that the alleged contract is dated "Laddonia, Mo., Oct. 27, 1924," and that it is in the form of an offer addressed to "Mrs. Helena L. Boehm now Sobolewski" and signed "Mrs. Helena L. Boehm now Sobolewski." According to the testimony of defendants, the contract was written by Mr. Sobolewski and signed by Mrs. Sobolewski in their home on the date shown therein, and, thereafter, kept in a tin box in their home. And, according to the testimony of Mrs. Sobolewski, the contract was "produced" by Mr. Sobolewski and "submitted" to Mr. Logan at the time Mr. Logan, as attorney for Mr. Sobolewski, wrote the letter, dated "Jan. 29, 1927," to the plaintiff Elizabeth Nace Holtgreve, and the letter, dated "Jan. 31st, 1927," to the plaintiff Laura E. Campbell. True, the evidence developed by plaintiffs tends to show that defendants did not advise plaintiffs of the alleged contract when they (defendants) were advised that plaintiffs had "perfected" insur-

ance on the house or at the time Mrs. Sobolewski was seeking a renewal of the loan on her farm, and that defendants made some statements to plaintiffs' attorney in which they referred to the house as additional security for the loan on Mrs. Sobolewski's farm. But, in our opinion, these acts and statements of defendants, when considered in connection with Mr. Sobolewski's subsequent notice to plaintiffs of his claim, were not inconsistent with the existence of the alleged contract, and do not justify the conclusion that the alleged contract was "a mere afterthought" on the part of defendants. On the contrary, we think it is established by the greater weight of the evidence that the alleged contract was entered into by defendants in good faith on the day it purports to have been written and signed, and that it was performed by defendants in good faith, and we so find.

While the evidence fails to show that plaintiffs were advised of the existence of this contract prior to the foreclosure sale, it appears from letters written by Mr. Sobolewski and his attorney, Mr. Logan, to plaintiffs and their attorney, Mr. Jones, that plaintiffs were advised, prior to the foreclosure sale, that Mr. Sobolewski built the house at a cost of $4,000 and paid for it with his own money, and that, if Mrs. Sobolewski's farm was sold under the deed of trust, he would "put in" his claim, and claim an "equitable interest" in the farm, and claim an "equitable lien" on the farm "regardless" of the deed of trust, and file a suit in equity to enforce his claim. Moreover, plaintiffs' attorney, Mr. Jones, testified, on the question of notice, as follows:

"Direct-examination:

"Q. At the conversation at the coal bank did Mr. Sobolewski make any claim either to you or to Doctor Rankin that the house on Mrs. Sobolewski's farm belonged to him as his personal property? A. Oh no, *the first I ever heard of that we got from Mr. Logan.*

"Cross-examination:

"Q. Well, you had heard prior to that time that his money had gone into the house? A. Well, I would have to have the letters to give you the exact date.

"Q. Well, you had heard prior to that time? A. Only through letters. All I had was correspondence about that.

"Q. Now, when you received this letter on November 26th, in which (he said) he had put money in the house, did you make any effort to ascertain the extent of his claim? A. No, I didn't.

"Q. Now, then, I show you the letter on January first, where he says down there that he intends to enforce his claim. A. Yes.

"Q. Did you make any effort to determine what his claim was at that time? A. No, I didn't.

"Q. Did you investigate what kind of a claim he had? A. No, I didn't think he had any.

"Q. But, you had notice that he was asserting claim at that time? A. Well, he claimed it in that letter.

"Q. But, at that time, on January 1st, when you received this letter, you had notice he was asserting a claim? A. Yes, the letter says so.

"Q. Now, did you make any investigation to find out what it was—what his claim was? A. I never saw him after that, no sir."

Thus plaintiffs admit that they were notified, prior to the foreclosure sale, that Mr. Sobolewski built the house on Mrs. Sobolewski's farm with his own money, and that, by reason thereof, he had a claim which he would enforce if the farm was sold under the deed of trust; and they further admit that, after being so notified, they purchased the farm without making any investigation as to the character or extent of Mr. Sobolewski's claim. In view of these admissions, plaintiffs are not in a position now to say that they had no notice, prior to the foreclosure sale, that Mr. Sobolewski claimed the house as his personal property.

Plaintiffs have no equities which can be invoked in their favor, and they should not be permitted to appropriate property which is not, and never was, a part of the realty purchased by them. The contract made by defendants is a valid one, and reason and justice demand that it be enforced. Therefore, we hold that the defendant R. E. Sobolewski is the owner of the house, and that he has the right to remove the same, within a reasonable time, from the land purchased by plaintiffs at the foreclosure sale. In so holding, we are amply supported by the authorities. [31 C. J. 310-312; 11 R. C. L. 1083-1084; 41 A. L. R. 616-620; Patton v. Brick Co., 167 Mo. App. 8, 150 S. W. 1116; Wolf Co. v. Bank, 168 Mo. App. 549, 153 S. W. 1094; Peaks v. Hutchinson, 96 Me. 530; Roberts v. Caple, 8 Ala. App. 444; Binkley v. Forkner, 117 Ind. 176; Bank v. Stanton, 55 Minn. 211; Fischer and Knorr v. Johnson, Lane & Co., 106 Iowa, 181.]

The judgment rendered below is accordingly reversed and the cause remanded with directions to enter a new judgment in conformity with the views expressed in this opinion. *Davis* and *Cooley*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. *Blair, P. J.*, and *White, J.*, concur; *Walker, J.*, absent.