KELVINATOR ST. LOUIS, INC., A CORPORATION, RESPONDENT, v. ARTHUR M. SCHADER, APPELLANT.—39 S. W. (2d) 385.

St. Louis Court of Appeals. Opinion filed June 2, 1931.

480

*Stern & Burnett* and *Robert L. Aronson* for appellant.

482

*William E. Buder* and *Buder & Buder* for respondent.

HAID, P. J.—This is an appeal from a judgment for $2000 in favor of plaintiff in a replevin action tried to the court upon waiver of trial by jury.

Plaintiff brought its suit to recover possession of four Kelvinators, models No. 5512 LB condensing units, serial numbers 141905, 141909, 141828 and 141868, and thirty-six 08V frost coils of the alleged value of $2000.

Defendant denied generally all of the allegations of the petition and alleged that he is, and was at the date of the institution of the suit, entitled to the possession of the property.

The facts show that on April 9, 1928, Stanley Epstein, Inc., executed to Kelvinator St. Louis, Inc., a purchase agreement for installing refrigerating machinery and equipment in buildings 6648 and 6652 Washington Ave., St. Louis, that on May 11, 1928, Stanley Epstein, Inc., executed a chattel mortgage to the Kelvinator St. Louis, Inc., covering "Kelvinator(s) Models Nos. 4-5542 LB condensing units No. 141905, 141909, 141828, 141868" and "Other equipment (itemize) 36—08V frost coils" for a total of $3690, of which the mortgagor paid $600, and after adding to the balance a time financing charge of $82.19, left a balance due of $3172.19 which was to be paid in twenty-four monthly payments of $132.17 each, with interest at the rate of six per cent., from date of mortgage to due date and a larger rate after maturity.

The chattel mortgage recited that, "to secure payment of the purchase price, the mortgagor does hereby grant, bargain, sell and mortgage unto said mortgagee, the above described personal property, to have and to hold unto said mortgagee, his personal representatives, successors and assigns forever." Under the chattel mortgage the mortgagor also agreed not to remove the merchandise from the address given below until he first obtains the written consent of the mortgagee or his assigns. Under the chattel mortgage the mortgagor also consented that the mortgagee or his assigns, without notice or liability for damages, might take possession of said merchandise without process of law wherever found and authorized the mortgagee to resell such merchandise. The mortgage was signed by Stanley Epstein, Inc., by Stanley Epstein, Pres., and the address given being 904 Chestnut Street. The chattel mortgage was filed for record in the office of the recorder of deeds of the city of St. Louis on May 16, 1928.

The equipment above referred to was installed in two apartment buildings numbered 6648 and 6652 Washington Boulevard, University City, Missouri, the installation being made in the latter part of April and first part of May, 1928, by an electrical company for the

plaintiff. At the time of the execution of the chattel mortgage, as shown by that instrument, Bertha Chertoff held the legal title to the real estate upon which the apartments were located. The last monthly payment was made under the chattel mortgage on March 11, 1929.

There was a second deed of trust on each of the pieces of property above mentioned, but the record does not disclose the dates thereof, nor when they were recorded. These deeds of trust were acquired by the Reliable Loan & Investment Company at some time previous to July 8, 1929 (the date of acquisition not appearing in the record), without actual knowledge of the chattel mortgage. These deeds of trust were foreclosed, the one on 6648 Washington Avenue on July 29, 1929, and the one on 6652 Washington Avenue on July 15, 1929. The two properties were purchased at the foreclosure sales by the defendant, the stenographer acting as straw man for the Reliable Loan & Investment Company.

Sometime prior to the purchase at foreclosure sale and previous to July 8, 1929, the Reliable Loan & Investment Company learned of the chattel mortgage as is evidenced by two letters it wrote the plaintiff.

The plaintiff's witnesses testified, in substance, that the plaintiff, through an electrical company, installed the system; that each of the apartments had in it an ice box which was not attached to the building; that there were four condensing units, two water cooled and two air cooled; that the compressors were placed upon two concrete blocks set upon the floor and that these blocks in turn were set upon cork which was in no wise attached to the basement floors; that the coils were placed in the ice boxes located in the various apartments and were fastened thereto by four bolts or studs; that the condensers were separate units and could be removed simply by disconnecting the electric connection at the switch and disconnecting the tubing at the pressure tank and since the condensers are not attached to the floor they could then be taken away; that the coils in the ice boxes were separate units and when removed therefrom the ice box could again be used to put in ice or to put in another coil; that there are six sets of conduit risers in each building which start in the basement and go eighteen inches above the floor on the third floor; that there is a hole made through the ceiling of the first floor, the ceiling of the second floor and the floor of the third floor and if these risers were removed there would be a hole in the floor and ceiling of each floor; the risers are fastened to the walls of the building by pipe straps, one pipe strap in each apartment which is screwed to the wooden molding around the top of the ice box, that there is a box on the side of the ice box called a junction box which is not attached to the wall; that from the water cooled apparatus there is tubing imbedded in the concrete floor connecting with the sewer system; that the removal of the compressors in the basement would

in no way affect the property and the removal of the coils would have no effect on the ice boxes; there was also a switch box and its baseboard attached to the building; that if the compressors were removed another type of compressor could be installed; that if the conduit and outlet box were removed a hole in the floor would be left and if the tubing was removed it would leave the conduit system throughout the buildings; that removing the tubing would not affect the building; that the tubes are in no way connected with the walls or floors; the conduits being the only things connected with the building proper; that there is no way of distinguishing coils of a certain model number from any other coils of the same model number.

The testimony of the secretary of the Reliable Loan & Investment Company was to the effect that the title to the real estate is in the name of the defendant, an employee of the Reliable Loan & Investment Company, who was used as a straw party in the acquisition of the properties at the foreclosure sales; that the Reliable Loan & Investment Company purchased the two deeds of trust upon the properties and by reason of default caused a foreclosure thereof; that this company learned of the chattel mortgage of the plaintiff some time prior to July 8, 1929; that before purchasing the deeds of trust the secretary of the company examined the two pieces of property and examined the Kelvinator equipment system located therein, but at that time he was not aware that there was a chattel mortgage on any of the equipment; that before purchasing the deeds of trust a certificate of title was secured from a title investigating company; that the motors rested on concrete blocks and below the concrete blocks were cork blocks; on top of that the motors, cylinder blocks, and fans, the condenser coil, water pipe, electric wiring; the coils in the ice boxes were suspended by four studs through the top of the ice box; that he did not know whether the compressing units and coils could be removed; that the removal of the equipment would necessitate the plastering of the ceiling, fixing of hardwood floors, repainting kitchens, redecorating the ceiling and walls; that the ice boxes would not be in good condition, that he did not know to what extent the coils could be removed and the ice boxes used; that it would be necessary to repaint the whole room if the conduits were removed; that the removal of the coils and compressors would damage the ice boxes; that he did not think they would be as good as they were originally before the holes were drilled; that he did not know if you could use ice in them or could install other makes of refrigeration; that he did not know whether removing the tubing from the conduits would in any way affect the buildings.

On behalf of the defendant the testimony, in substance, was as follows: that the condenser or condensing units were set the same as practically all units are, on blocks, with cork below on the floor

to take the shock out of them, keep the noise out of them; that there is a BX wiring from the switch box and starter box that they have on all refrigerating units; runs from there to the fuse box; and then a copper tubing is run from the condensing unit through the ceiling, and hung on metal straps nailed to the joists of the basement; and the BX is also nailed to the joists of the basement, are run along there from the fuse box over to the starting box of the equipment; that copper tubing runs across the ceiling to the riser which is a metal pipe running all the way up through the building and copper tubing pulled through it; that it is fastened to the wall and the riser is fastened to the chair rail by iron straps; that there are six risers in each building; that if the refrigerating apparatus were removed, in order to restore the buildings to the very condition they were in before it was installed there would have to be some new flooring put down in the kitchen, the ceiling would have to be plastered, and if the kitchens were papered, it would be necessary to paper the ceiling in each kitchen; that the connection box near the ice box is about a foot square, and that box, when taken away, would leave that space to be painted and the whole wall would have to be painted, perhaps the whole kitchen; that the switch box and starter box are screwed to a base board nailed to the basement wall; that the witness thought the reasonable cost of making necessary repairs, after those systems were removed, in order to restore the buildings to the very same condition they were in before the installation, would be somewhere between six and seven hundred dollars, not taking into consideration the ice boxes which the witness believed would not be fit to put ice in because of the hangers; that there is another hole in the back of the ice box where the tubing is brought in, which, if the tube is cleared out, would leave the ice box worthless, so far as using it again; that you might pull another tube through there and put some other electrical refrigator in; that when the ice boxes were originally installed they had no holes in the top of them or in the rear; that the compressors and coils could be removed and other equipment put in; that it would not damage the buildings to take the compressor out and put in another machine; that the coils could be removed the same way; to remove the tubing you would have to tear loose all the tubing that has been nailed to the property; to remove the straps you would have to pull out all those nails and those straps and disconnect the wiring; that if the risers were left in the room and just the compressors, coils and tubing removed they would in no way change the room.

As already stated, the case was tried to the court without a jury. The court was not requested to make any declarations of law and its finding was a general one in favor of the plaintiff. Under these circumstances, absent error in the admission or rejection of evidence, the conclusions reached by the court on substantial evidence, are

binding upon this court (Jones v. Eaton, 307 Mo. l. c. 177, 270 S. W. 105; Hecker v. Bleish (Mo.), 3. S. W. (2d) l. c. 1014) and "the judgment will not be disturbed if upon any reasonable theory of the law and facts it can be sustained." [Zeitinger v. Hargadine-McK. D. G. Co., 298 Mo. l. c. 473, 250 S. W. 913; Noell v. Chicago & E. I. Ry. Co. (Mo. App.), 21 S. W. (2d) l. c. 94; Kirschbaum v. Northwestern P. & R. Co. (Mo. App.), 237 S. W. l. c. 549.] We have no right to pass upon the weight of the testimony in such case. [Security S. & Mfg. Co. v. Stevens (Mo. App.), 9 S. W. (2d) l. c. 810.] In order to sustain the judgment, however, the correct principles of law must have been applied. [Meyer v. Bobb, 185 Mo. App. l. c. 701, 171 S. W. 600; Noell v. C. & E. I. Ry. Co. (Mo. App.), 21 S. W. (2d) l. c. 941.]

The defendant contends, that conceding for the purpose of argument that the proper place for filing the chattel mortgage in question was, under Section 3097, Revised Statutes 1929, the place where the mortgagor resides, or if a non-resident of the State, then in the county where the property mortgaged was situated at the time of executing such mortgage, that the plaintiff failed to prove that the mortgagor corporation was a local corporation.

The defendant objected to the introduction in evidence of the chattel mortgage in the trial court because it had not been connected with the petition, that the articles covered were not sufficiently described and that the property is located in St. Louis County whereas the chattel mortgage is recorded in St. Louis. Defendant having limited his objection to the grounds stated he cannot shift his position here and urge an objection to the introduction in evidence of the chattel mortgage not made in the court below. [St. Louis v. Railroad, 248 Mo. l. c. 26, 154 S. W. 55; Clooney v. Wells (Mo.), 252 S. W. l. c. 75; Compton v. Louis Rich C. Co. (Mo.), 287 S. W. l. c. 483.]

At the trial no question whatever was raised concerning the corporate residence of the mortgagor, while the purchase contract, chattel mortgage and the deeds of trust indicated that the mortgagor was a Missouri corporation, with its principal place of business at St. Louis. While the charter of the corporation is the best evidence, these facts may be found from other evidence if no objection is made to such evidence. Here the court was fully warranted in basing its judgment upon the facts in evidence, that the mortgagor was a local corporation with its principal office in St. Louis.

But defendant says that his objection to the introduction in evidence of the chattel mortgage ought to have been sustained because all of the property is not sufficiently described therein. Defendant concedes that the condensers, identified by numbers, were sufficiently described and, therefore, since the chattel mortgage, if properly recorded, was concededly good as to the condensers, it was admissible in evidence,

at least to show that fact. Although a want of proper description might render the chattel mortgage unenforceable as to particular articles, it would be good as to those articles which were definitely described. [Luce v. Moorehead, 73 Iowa, 498, 5 Am. St. Rep. 695; Hall v. Glass, 123 Cal. 500, 69 Am. St. Rep. l. c. 80; Union Nat. Bank v. Oium, 3 N. Dak. 193, 44 Am. St. Rep. 533.]

This contention must, therefore, be ruled against the defendant.

The next contention of the defendant is that the articles sought to be recovered are fixtures, as between plaintiff and defendant, and, therefore, are governed as to recording by Section 3039, Revised Statutes 1929, which provides that "Every instrument in writing that conveys any real estate, or whereby any real estate may be affected, in law or equity, proved or acknowledged and certified in the manner hereinbefore described, shall be recorded in the office of the recorder of the county in which such real estate is situated."

The trial court also found this issue against the defendant. We have no doubt that as between the mortgagor and the mortgagee the articles involved would have to be held to be personal property because of the contract which existed between them that it should remain such, but if such property has been so used as to constitute it a fixture, the contract between the original parties would certainly not be binding upon a third party who has neither actual nor constructive notice of that agreement.

As the record discloses, the secretary of the Reliable Loan & Investment Company, prior to purchasing the second deeds of trust upon the real estate involved, inspected the premises where this refrigerating plant was installed and observed that it was there. As a matter of precaution he also had a title company examine the records to determine whether there were any existing liens upon the property and the plaintiff does not claim that there was anything to indicate that there was a chattel mortgage upon any portion of the refrigerating plant except the notice imparted by the chattel mortgage filed in the recorder's office of the city of St. Louis.

The refrigerating plant was a complete system, every part of which was absolutely necessary to the operation of the whole, and, therefore, one observing the plant would necessarily conclude that it was a part of the building in which it was installed.

The plaintiff insists, however, that because, as shown by the evidence, the condensers and coils are so attached to the balance of the equipment as to be capable of disconnection and removal without serious damage, that notwithstanding the use for which they were there placed, they did not become fixtures.

In the case of Thomas v. Davis, 76 Mo. 72, the court quotes with approval from Fisher v. Dixon, 12 Cl. & F. 312, as follows:

"When the absolute owner of land in fee for the purpose of better using the land, erects upon and affixes to the freehold, certain

machinery, such as is in use in making coal, and in mines, it will go to the heirs as part of the real estate; and if the corpus of such machinery belongs to the heir all that belongs to the machinery, although more or less capable of being detached and being used in such detached estate, from it, must be considered as belonging to the heir.''

So in the case at bar the owner of the fee had erected in the apartment in question switch boxes, junction boxes, conduits and risers, all of which would have been absolutely useless for refrigerating purposes without having attached thereto the condensers and coils necessary to operate such a plant. While it is true that the testimony was to the effect that the condensers were not actually attached to the floor and could have been removed without serious damage to the building and while the coils could also have been removed with but slight damage to the ice boxes, yet, it seems to us, that as between the rights of the chattel mortgagee and a third person without notice, the condensers and coils were as much a part of the real estate as the other parts of the system which were permanently attached to the buildings.

In the case of St. Louis Radiator Mfg. Co. v. Carroll, 72 Mo. App. l. c. 319, the court said:

''While the decisions on this subject depend much on the facts of the particular case, the principle to be extracted from them is that a fixture of the class under discussion (radiators) is made up of three elements, annexation, adaption and intent. Of these in modern times the latter two are more important than the one relating to the method by which the chattel is attached to the freehold. Such annexation, though slight and easily displaced, will not prevent an article becoming a fixture which is adapted to the proper use of a building, and which was placed therein by the owner with the intent of forming a part of the special object and design for which the building was constructed.'' Citing cases.

In the case of Crane Co. v. Epworth Hotel, etc., Co., 121 Mo. App. 209, 98 S. W. 795, which involved the question as to whether hose with nozzle and hose rack which were furnished to be attached to stand pipes erected in the hotel were fixtures in such sense as to support a mechanic's lien, the court said: ''The purpose for erecting the stand pipes in the hotel was to afford protection against fire. Of themselves the pipes did not accomplish this object. To complete the design for protection, it was essential that the hose and attachments be provided, and they were provided and attached to the pipes and became an integral part of the original design, and it seems to us were as much a fixture as the pipes themselves.''

In the case of Southern El. S. Co. v. Rolla El. L. & P. Co., 75 Mo. App. 622, the court held that wires strung upon poles and carried into the plant of the defendant were fixtures because they

were attached to the building, formed an integral part of the improvement and were absolutely necessary to the operation of the plant, and hence should be regarded as a part of the machinery of the plant and as an appurtenance of the lot upon which the plant is constructed.

In the case of Security Stove & Mfg. Co. v. Stevens (Mo. App.), 9 S. W. (2d) 808, the action was to enforce a mechanic's lien for gas ranges or stoves sold and placed in an apartment house. In passing upon the character of these appliances the court said, "If these ranges were not a necessity (and we are not holding they were not) the evidence shows they were at least a convenient accessory and commonly employed in connection with kitchenettes, and we think there is sufficient in the evidence from which the court sitting as a jury might infer that it was the intention of the defendant in supplying these stoves for them to become a fixture and a part of the realty."

In view of what we have said we think there can be no escape from the conclusion that as between the mortgagor and a third person in the absence of actual notice of a chattel mortgage, the articles became a part of the real estate in question.

This leads us to the inquiry as to whether the filing of the chattel mortgage in the city of St. Louis covering such appliances placed in a building in St. Louis County, furnishes such constructive notice as will enable the mortgagee to recover the property in question as against a third person not having actual notice.

It will be observed that Section 3039 of our statute not only requires that every instrument in writing that conveys real estate shall be proved or acknowledged and certified in the manner prescribed and shall be recorded in the county in which such real estate is situated but it also requires that every instrument in writing, *whereby any real estate may be affected,* shall likewise be proved or acknowledged and certified and recorded in the office in the county in which such real estate is situated. All other matters affecting real estate are required to be filed and recorded in the county where the real estate is located and, therefore, it would be useless to file a deed of trust, a notice of *lis pendens,* a leasehold or a mechanic's lien claim in any other county than that in which the property is located. If, therefore, it is necessary to prevent an article from becoming a fixture by reason of the fact that it is a part of a complete system, that the mortgage affecting the same shall be recorded in the county where the real estate is situated, a recording thereof in any other place would be as ineffectual as if it was not recorded at all and, consequently, would be binding only between the parties to the mortgage and would furnish no notice to third parties. [Barnard State Bank v. Llankford (Mo. App.), 11 S. W. (2d) 1087.]

So far as we are advised there are no decisions in this State upon this question but there are cases in other states which seem to us

to announce the only rational rule to be applied in such a situation as we have here.

The case of Phillips v. Newsome (Tex.), 179 S. W. 1123. was a case in which the Southern Trading Company sold an engine to the Eubanks & Henry Gin Company, the latter executing a chattel mortgage upon the same to secure the payment of part of the purchase price and in which chattel mortgage it was recited that the engine should not become a fixture attached to any realty but should remain as personal property, the title to remain in the trading company. This mortgage was recorded in the chattel mortgage records of the county to which the engine was taken and used in the construction and operation of cotton gin. The mortgagor not having paid the mortgage debt at maturity the mortgagee instituted a suit and obtained a judgment foreclosing the mortgage. In the meantime J. L. Newsome purchased the lots and gin property and received a warranty deed therefor. At the time of such purchase he was without any actual notice of the claim of the mortgagor or of its chattel mortgage. The court found that the engine was originally attached to the other gin property with a view of its permanent location. The court said:

"While as between the parties to the mortgage it is undoubtedly true that the character of the property may be fixed by a contract, that is, the purchaser may estop himself from claiming the property as a part of the realty by reason of a subsequent attachment thereof to the soil, but appellee was not a party to the mortgage contract under consideration. He was not affected by the provision that the engine should not become a part of the realty, and was without knowledge of it. As against the mortgagor, appellee, was a purchaser in good faith and without notice and had the right to view the property in accord with its apparent condition and character at the time of his purchase."

In the case of Ice, Light & Water Co. v. Lone Star E. & B. Works, 41 S. W. 1. c. 837, 15 Tex. Civ. App. 694, the court said:

"And the better opinion is that a purchaser of the realty is bound only to take notice of the record title of the realty and is not in any way bound to examine the records for chattel mortgages, for he is not affected by the record of a chattel mortgage upon fixtures of such realty."

In the case of Skinner v. Stewart Plumbing Co. (Ga.), 155 S. E. 97, the plumbing company sold to one Mathis a bathtub and other articles for a bathroom with a contract in writing that they should not be removed without the consent of the vendor in whom the title should remain until full payment was made of the purchase price. The contract was duly recorded as a chattel mortgage. Later the title to the house was passed to Skinner who purchased in good faith and without actual notice of the contract. It was stipulated that by the installation the articles did not lose their identity but

on the contrary were detachable and removable without materially injuring the real estate. It appeared that the vendee of the fixtures resided in the same county in which the land was located and, therefore, the record of the conditional sale was in the same office where papers affecting the title to the real estate would probably have been recorded. The court, among other things said:

"The seller, by a record which, in law, is applicable only to personalty, is seeking to burden that which, by his consent, apparently became realty, and justice and reason would both argue that, as to purchasers acting in good faith and without actual notice, the property should be treated as what it appears to be, unless there is some recorded incumbrance upon the land such as would amount to constructive notice."

Further on in its opinion the court says that:

"The vendor in this case occupies the inconsistent position of reserving the title to personalty and of recording his claim upon the property as such, and of consenting at the same time that the property shall assume the appearance of realty, and, in fact, become realty except for the purpose of his own special agreement. He has thus made it possible for his vendee to do injury to others by selling the property, and his conduct is subjeect to the equitable rule that, 'when one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury must bear the loss.' "

The case of Bringholff v. Munzenmaier, 20 Iowa, 513, holds that a chattel mortgage recorded and indexed as such does not operate as constructive notice to a purchaser of the land.

In Jones on Chattel Mortgages (5 Ed.), Sec. 134, it is said:

"And the better opinion is, that a purchaser of the realty is bound only to take notice of the record title of the realty, and is not in any way bound to examine the records for chattel mortgages, for he is not bound by the records of a chattel mortgage upon fixtures of such realty."

We think this statement is amply sustained by the authorities and seems to us must be the true rule governing the subject.

Plaintiff has cited a number of cases in support of its view, but an examination of those cases will disclose they are not applicable to the situation here.

Among the cases relied upon is that of Fred W. Wolf Co. v. Hermann Savings Bank, 168 Mo. App. 549, 153 S. W. 1094. There a deed of trust upon the property of a brewing company was executed to the bank to secure a loan. Several years after the execution of such deed of trust the brewing company purchased an ice machine upon a conditional sales contract. It was held that the bank did not lend its money on the security of this ice machine and that installation of that property instead of injuring the bank's security, benefited

it to the extent of the payments made by the brewing company on the purchase price and, accordingly, that the vendor of the ice machine was entitled to pursue its remedy for the recovery of that property or, treating the unpaid purchase price as a lien on the property, might sue for the enforcement of the lien.

Another case relied upon by the plaintiff is that of Holtgreve v. Sobolewski (Mo.), 31 S. W. (2d) 993. In this case it appeared that the owner of real estate executed a deed of trust upon the property. Sometime after the execution of this deed of trust Sobolewski entered into an agreement with the owner of the property for the erection of a house thereon upon condition, however, that the house should remain personal property and that he should be permitted to remove the same. The plaintiffs purchased the notes prior to the time the house was built and, therefore, they did not purchase upon the assumption that the house was a part of the realty. It was accordingly held that the plaintiffs had no equities which could be invoked in their favor and that they should not be permitted to appropriate property which never was a part of the realty purchased by them at the foreclosure sale under the deed of trust.

In the case of American Clay Mach. Co. v. Sedalia B. & T. Co., 174 Mo. App. 485, 160 S. W. 902, the owner of real estate purchased certain machinery under written contracts that such machinery was to remain the property of plaintiffs until paid for in full, and that its installation in any building should in no sense be construed as making it real estate, etc. After the machinery was purchased and had been installed the purchaser executed a deed of trust upon all its plant and ground, in which was included the machinery so purchased from the plaintiff company, but the machinery was conveyed, "subject to the incumbrance due said company." The deed of trust was afterwards foreclosed and the property bought in at the sale by the president of the Sedalia Clay Mfg. Company, the corporation that purchased the machinery from plaintiff, but the trustee's deed in conveying the plant also conveyed the machinery in question subject to the incumbrance thereon due the plaintiff company. Subsequently the plant was conveyed to the defendant but in that deed the machinery in question was again conveyed subject to the incumbrance to the plaintiff. In its opinion the court distinctly refers to the fact that there is a difference between agreements made before and after the subject-matter of the agreement has become real estate. The court accordingly affirmed a judgment in favor of the plaintiff.

The case of Kolb v. Golden Rule Baking Co. (Mo. App.), 9 S. W. (2d) 841, was an action brought by the vendor of the articles furnished against the vendee under a written contract and did not involve any question concerning a third party asserting any right thereto as a part of the realty.

But plaintiff asserts that notwithstanding all this, the Reliable Loan & Investment Co. (whom defendant represents) acquired knowledge of the chattel mortgage a short time before the foreclosure of those mortgages at the sale under which the defendant acquired title to the real estate. We are unable to see how knowledge acquired after the acquisition of the deeds of trust could destroy any rights acquired under those deeds of trust.

In the case of Finley v. Babb, 173 Mo. 257, 73 S. W. 180, the question was whether the defendants as purchasers at the foreclosure of a second deed of trust and with notice there given took subject to the first deed of trust, or whether they acquired all the rights that the holder of the second deed of trust had at the date of the execution and recording of the second deed of trust. It was held that the purchaser at the sale succeeded to all the rights, title and interest conveyed and created by the second deed of trust.

In the case of McMurray v. McMurray, 258 Mo. 405, 167 S. W. 513, the purchaser at a foreclosure sale had, previously thereto, acquired knowledge that the maker thereof held the land for another to defraud the latter's creditors. The court said, "As the note and deed of trust were good, she had the right to foreclose and purchase the property under such foreclosure, even though in the meantime she had learned that Batson held the land for Mrs. McMurray."

There are a number of other questions raised, but since our holding necessitates a reversal of the judgment it would be useless to lengthen an already long opinion by a review of such questions.

From what we have said it results that the judgment of the circuit court must be and the same is hereby reversed. *Becker* and *Nipper, JJ.*, concur.