GLOBE AUTOMATIC SPRINKLER COMPANY, A CORPORATION (PLAINTIFF), APPELLANT, v. C. F. BOESTER, D. S. BROWN AND A. M. SULLIVAN, AS TRUSTEES OF NORTH HILLS TRUST ESTATE, (DEFENDANTS) APPELLANTS; BROWNSTONE HILLS REALTY COMPANY, A CORPORATION (INTERVENOR), RESPONDENT; NORWOOD HILLS CORPORATION, A CORPORATION (DEFENDANT), RESPONDENT.—95 S. W. (2d) 825.

St. Louis Court of Appeals. Opinion filed July 7, 1936.

*Bryan, Williams, Cave & McPheeters* for respondent Brownstone Hills Realty Company.

*T. M. Pierce, Samuel H. Liberman* and *E. T. & E. H. Miller* for appellant Globe Automatic Sprinkler Company.

206

BENNICK, C.—This is a suit by plaintiff, Globe Automatic Sprinkler Company, for the balance due it under a contract for the installation of a sprinkler system in certain property known variously as North Hills Country Club and Norwood Country Club, together with a prayer that in the event such balance was not paid within a time to be fixed by the court, plaintiff's vendor's lien might be foreclosed, and the property sold, and the proceeds of the sale applied to the indebtedness due plaintiff.

It appears from the stipulated facts in the case that the property in question, which is located in St. Louis County, is and was at all times owned by the intervenor, Brownstone Hills Realty Company.

On May 1, 1922, the Brownstone Hills Realty Company leased said property to one Hawke, said lease containing provisions to the effect that the lessee was not authorized to make any improvements of the property at the expense of the lessor, and that the lessor was to be under no obligation to pay for any improvements that might be made by the lessee.

Thereafter, on August 11, 1922, said lease was duly assigned by Hawke to the North Hills Trust Estate, a common-law trust, whose trustees were defendants C. F. Boester, D. S. Brown, and A. M. Sullivan.

Both the lease from the Brownstone Hills Realty Company to Hawke and the latter's written assignment of it to the North Hills Trust Estate were duly recorded in the office of the Recorder of Deeds in St. Louis County.

On July 18, 1928, plaintiff's assignor, the Consolidated Equipment Company, entered into a written contract with the trustees of the North Hills Trust Estate for the sale and installation in the clubhouse of the sprinkler system in question for the price of $9538, which sum was made payable by the purchasers upon certain stated terms. Of such contract price it appears that the principal sum of $2774.50 is now due and unpaid.

In and by the terms of said contract it was provided that title to the sprinkler system so sold and installed was reserved in the vendor

until the payment of the entire amount due under the contract, and that in default of the purchasers thereunder the latter should pay all the costs and expenses of the vendor, including a reasonable attorney's fee, which, in the event of a pecuniary claim, was agreed to 10% of whatever amount should be involved.

As in the case of the lease and its subsequent assignment, this contract was likewise filed for record in the office of the Recorder of Deeds, and was entered in the book of "Chattel Deeds of Trust and Mortgages."

Inasmuch as the controversy in the case involves the question of whether, upon the installation of the sprinkler system in the clubhouse, the same became a fixture within contemplation of law, it is of importance to note from the stipulation of facts that the Brownstone Hills Realty Company, the owner of the property, at no time authorized the North Hills Trust Estate or its trustees to enter into a contract whereby any part of the property constituting real estate should be considered personalty, title to which should be retained by any person so as to permit the same to be removed from the real estate, nor did said Brownstone Hills Realty Company have or acquire any actual knowledge of the contract entered into between the North Hills Trust Estate, through its trustees, and plaintiff's assignor, the Consolidated Equipment Company, until the institution of this suit on September 1, 1933.

At some undesignated time subsequent to the installation of the sprinkler system the lease of the North Hills Trust Estate was forfeited by the lessor because of the former's failure to have carried out the terms and obligations of the lease, and the trustees were ousted from possession of the property.

Thereafter defendant Norwood Hills Corporation was organized and incorporated on January 13, 1933, for the purpose of taking over a leasehold upon the property, and on February 1, 1933, it entered into possession of the property, and now holds possession of the same under the terms of a lease with option to purchase which was executed as of the latter date in its favor by the Brownstone Hills Realty Company.

On April 27, 1933, the Consolidated Equipment Company assigned, transferred, and conveyed all its right, title, and interest in and to the contract in question to the plaintiff herein, and thereafter the present suit was instituted as has already been indicated.

The named defendants were the individual trustees of the North Hills Trust Estate who had entered into the contract for the purchase and installation of the sprinkler system, and the Norwood Hills Corporation, the present lessee of the property with the system installed therein. The Brownstone Hills Realty Company, the owner of the property, was for some reason not originally joined

as a party to the suit, but subsequently, upon its own motion, was allowed and permitted to intervene in the case.

The several pleadings set up the facts of the case in much the same fashion as we have already detailed them, and, so far as this appeal is concerned, it is enough to say that they joined issue upon the question of whether the sprinkler system had been built into the clubhouse in such a manner as to become an integral part thereof and thereby to defeat plaintiff's reservation of title thereto as conditional vendor upon the theory that the removal of the same could not be accomplished without material damage to the building as it stood at the time of the installation of the system.

Upon a trial of the case the court entered up a judgment in favor of plaintiff, and against defendants Boester, Brown, and Sullivan as trustees of North Hills Trust Estate, for the aggregate sum of $3407.69, but denied plaintiff's prayer for a lien upon the property as against its owner, the Brownstone Hills Realty Company, as well as its prayer for the sale of the property in default of the payment of the judgment.

From such judgment against them the trustees took their separate appeal, and plaintiff likewise appealed from the judgment in so far as it denied its claim of a lien upon and right to sell the property. As the case is presently submitted it is only with the questions raised on plaintiff's appeal that the court is now to be concerned.

So the question here involves the right of plaintiff, a conditional vendor, to assert its recorded reservation of title to the sprinkler system as against the contention of the Brownstone Hills Realty Company, the owner and lessor of the property, that upon the installation of the system in the clubhouse under contract with the lessee the system became so much an integral part of the building as to lose its identity as personalty and become a part of the real estate.

There seems to be no reported case in this State which passes upon the rights of a conditional vendor, who, having sold an article to a lessee under an agreement with the latter that such article shall remain personalty even after its annexation to the realty, upon the lessee's subsequent default in the payment of the purchase price finds his reservation of title opposed by the owner or lessor of the property. However counsel for the respective parties agree that the legal position of the owner or lessor in such a situation is no different from that which a prior mortgagee would occupy, which is that such prior mortgagee stands in the exact shoes of his mortgagor who has contracted with the vendor that the article shall remain personalty, except when the character of the annexation of the article has been such that its severance or removal would work substantial and material damage to the structure as it stood at the time of the annexation.

[Grinnell Co. v. Farm & Home Savings & Loan Assn. (Mo. App.), 74 S. W. (2d) 1097; General Motors Acceptance Corp. v. Farm & Home Savings & Loan Assn., 227 Mo. App. 832, 58 S. W. (2d) 338; Greene County Building & Loan Assn. v. Holland Furnace Co., 227 Mo. App. 972, 59 S. W. (2d) 749; The Fred W. Wolf Co. v. Hermann Savings Bank, 168 Mo. App. 549, 153 S. W. 1094; Wayne Tank & Pump Co. v. Quick Service Laundry Co. (Mo. App.), 29 S. W. (2d) 161; 26 C. J. 684.]

This for the reason that a prior mortgagee, having parted with nothing on the faith of the subsequent annexation of the article, has no right to insist other than that the actual security he took be not impaired by the removal of the article; and similarly a lessor, who has let certain premises to his lessee, has no right to contend that the premises should revert to him enhanced by improvements put upon the same by the lessee if the removal of such improvements would not so diminish the value of the premises as to place them in a worse condition than when the lease was executed. [26 C. J. 689.]

This brings us then to the question of what the resulting damage would be to the clubhouse if the springler system were removed, that is, as to whether its removal would leave the premises in a worse condition than they would be in except for the consequences of the removal of the system. Of this we think there can be no serious doubt in the light of both reason and precedent.

The system appears to be the conventional type of sprinkler apparatus, with a connection to an outside water main through an eight-inch pipe which runs horizontally underground in the basement of the clubhouse, and from which pipe four supply pipes rise vertically at different points in the basement to carry the water to the upper floors, whence the water is carried through horizontal pipes branching out through all parts of the building, and having sprinkler heads attached at regular intervals along such horizontal pipes so constructed as automatically to open and permit the discharge of water whenever the temperature surrounding the sprinkler heads should reach the required point.

The four vertical pipes necesarily pass through openings made in the floors and ceilings, two of the pipes being fully exposed, and two of them concealed by encasement within a system of laths and plaster. In the case of the horizontal pipes, approximately half of them are concealed from view, and approximately half are left exposed, depending upon their location in the building. In the basement, boiler room, attic, kitchen, and men's shower and locker rooms the pipes are left exposed, while in the dining room, main lounge, entrance hall, grill and connecting rooms, and ladies' lounge and locker rooms the pipes are concealed from view, though of course even in

this portion of the premises the sprinkler heads themselves protrude through holes in the ceiling which are masked by ornamental rosettes. So far as concerns the matter of the support of the several pipes, either they are laid to rest upon the joists, or else are suspended through rings or hangers which are attached to the ceiling by screws.

To elaborate upon all the details of the evidence regarding the construction and mode of annexation of the sprinkler system would serve no very useful purpose. It is enough to say that to remove the system would obviously result in substantial damage to the clubhouse, and especially so when due consideration is had for the character of the clubhouse as a structure designed largely to accommodate social gatherings of people to whom the beauty and nicety of the surroundings would have a very special appeal. Surely in determining the question of the damage which would be expected to result from the removal of such a sprinkler system a country club is to be viewed far differently than such a structure as a manufacturing plan or a warehouse; and what would perhaps not be regarded as substantial damage to the latter might very well constitute such material damage to a clubhouse as largely if not entirely to destroy its adaptability for the sole purpose it is designed to serve. So we conclude from all the facts in the case that as to the Brownstone Hills Realty Company, the owner of the premises, which was concededly not a party to the contract with plaintiff's assignor, the sprinkler system, when annexed, became a part of the realty so as to defeat plaintiff's reservation of title to it in this suit in so far as plaintiff's rights are to be measured in the light of the rights of the Brownstone Hills Realty Company as the owner and lessor of the property. [Viking Equipment Co. v. Central Hotel Co. (Mo. App.), 91 S. W. (2d) 94; Grinnell Co. v. Farm & Home Savings & Loan Assn., supra.]

But plaintiff says that even though it should be thought to be impossible to remove certain parts of the sprinkler system without material damage to the physical structure of the clubhouse, yet other parts of the system could be removed with practically no damage, so that its lien should at least be permitted to go against the owner as to all those portions of the system which might be found to be removable without the doing of material injury.

The argument is persuasive, but we believe unsound when all the facts of the case are viewed in the light of such authority as there is upon the question.

It has been held as a general proposition of law that where the device or appliance annexed to the realty consists of individual parts, all of which must be employed in conjunction and as a unit to enable the device or appliance to serve the purpose for which it is adapted, then the whole of the device or appliance must be regarded as a fixture,

even though parts of it might indeed be capable of disconnection, severance, and removal without danger to the structure itself. [Kelvinator St. Louis, Inc. v. Schader, 225 Mo. App. 479, 39 S. W. (2d) 385; Thomas v. Davis, 76 Mo. 72, 76; Crane Co. v. Epworth Hotel Construction & Real Estate Co., 121 Mo. App. 209, 222, 98 S. W. 795; 11 R. C. L., pp. 1086, 1087; 26 C. J. 663.]

We grant that to permit the owner or lessor to get back his property enhanced by even a part of a sprinkler system does in a certain sense give him something of value over and above that which he had when the property was originally let, and to that extent, even though the incomplete system is unworkable, does undoubtedly leave room for plaintiff's present insistence that the equity in the matter is with it as the assignee of the conditional vendor. However there is an answer to this contention, which is that except for the contract between vendor and vendee no part of the system could be regarded as personalty after its installation in the clubhouse, and here the contract, which was of the vendor's own making and was evidently to its liking, was one for the installation of a complete system, title to all of which was to be reserved in the vendor notwithstanding its annexation to the realty. In other words, whatever rights plaintiff might now have to claim a status of personalty for the system or any part of it must come to it by virtue of the contract of its assignor with the vendee, and inasmuch as its assignor contracted for the installation of the system as a unit, plaintiff may not now be heard to urge that the identity of the system as either personalty or realty should be determined other than by viewing the same as a unit. In this respect the case at bar is distinguishable from the case of General Motors Acceptance Corp. v. Farm & Home Savings & Loan Assn. supra, in which the vendor did not sell its refrigerating system as a unit, but was careful to reserve title to itself only to those parts of the system which could be removed without damage to the structure.

It follows that the judgment of the circuit court, in so far as it denies plaintiff's prayer for a lien upon the property as against Brownstone Hills Realty Company, the owner thereof, and for an order for the sale thereof, should be affirmed, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court, in so far as it denies plaintiff's prayer for a lien upon the property as against intervenor, Brownstone Hills Realty Company, and for an order for the sale thereof, is, accordingly, affirmed. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.