Mathew SIMS, Clarence Fausett and Ernest Yates, as Trustees of the Pentecostal Tabernacle Church, now affiliated with the Church of God, Plaintiffs-Appellants,

v.

J. T. WILLIAMS, Defendant-Respondent.

No. 8746.

Springfield Court of Appeals.

Missouri.

May 5, 1969.

Rolland L. Comstock, Springfield, for plaintiffs-appellants.

E. W. Collinson, Springfield, for defendant-respondent.

FRANK W. HAYES, Special Judge.

This is an action in replevin by appellants who, as trustees, seek to recover eighteen church pews formerly installed in the Pentecostal Tabernacle Church at 3010 West Nichols, Springfield, Missouri. The respondent claims them as fixtures attached to said building at the time he purchased the church building at a foreclosure sale on March 10, 1965. The trial court found for respondent on his counterclaim and assessed his damages at $1,800. The sole question on appeal is whether the church pews were fixtures and a part of the real estate or were personal property belonging to appellants.

In late 1963, the membership of the Pentecostal Tabernacle Church began the con-

struction of a new church building at the above address. Title to the real estate was taken in Guy Wolfe, Ernest Lafferty and Mathew Sims, as trustees. A building loan was obtained and a deed of trust, presumably in standard form, was executed to secure it. Payments on the loan were made by funds mainly arising from offerings, donations, etc.

The church pews were purchased from The School of the Ozarks for about $2,000 and were delivered in February 1964. The pews were installed and attached, with help of a power gun, to the building with heavy bolts which were screwed into holes made into the floor of asphalt tile laid on concrete. Cleats were attached to the bolts and screwed onto the pews and fastened with a tap.

Dissension arose among the members. The old trustees were removed and appellants were elected trustees of the Pentecostal Tabernacle Church of God which affiliated with the Church of God. As such they replevied the pews on November 6, 1965. The evidence disclosed that the installation and removal of the pews defaced the floor. There were snow white discolorations where the pews had rested and holes around the places where the bolts had been inserted in the flooring in holes filled with lead. The removal of the pews broke some of the bolts and cracked some of the tile which could not be repaired and broke out some of the concrete. Some of the tile was loose, disfigured, not level, and defaced.

The evidence of the intention of those installing the pews was conflicting. Pastor Fausett and Trustee Sims testified it was intended to remove the pews later to an addition to the building. Trustees Lafferty and Wolfe denied this. There was no evidence that any addition to the building would be built in the foreseeable future or that these pews would be superseded by others more suitable. These pews were adapted for use in this building which was to be used as a church and were annexed to the real estate by being securely bolted to

the floor and their removal defaced the floor and damaged the building. The pews were part of the real estate at time of delivery of the deed of trust and at time of the foreclosure sale. At the sale, the respondent inquired if pews went with the church and attorney John Lewis, who handled foreclosure, stated they "can't be removed out of the church." None of the members present contradicted this statement. Sometime after the sale, there was a conference at which respondent, appellants, and Messrs. Warren, Lafferty and others, including Pastor Fausett, were present and they discussed what was to be done with personal property of the church. No claim was made that the church pews belonged to appellants, but certain other personal property was claimed by appellants.

■ This case was tried before the court without a jury. It is the duty of this court to review the case de novo and, in doing so, this court will weigh the competent evidence and reach its own conclusion as to the facts, giving due regard to the more favorable position of the trial court to judge the credibility of witnesses. Euge v. Blase, Mo., 339 S.W.2d 807; Fisher v. Miceli, Mo., 291 S.W.2d 845; Blanke v. Miller, 364 Mo. 797, 268 S.W.2d 809; Nixon v. Franklin, Mo., 289 S.W.2d 82; Cannon v. Bingman, Mo.App., 354 S.W.2d 894; Lewis v. Wolfe, Mo.App., 413 S.W.2d 314, where it is said, l.c. 317:

> "At the same time, where the evidence is conflicting and close, and particularly when the decision depends upon conflicting oral testimony and the credibility of witnesses, the appellate court should generally defer to the findings of the trial court unless it is satisfied they should have been otherwise. Leggett v. Missouri State Life Ins. Co., Mo., 342 S.W. 2d 833, 850[2]; In re Petersen's Estate, Mo., 295 S.W.2d 144, 148[3]."

In deciding the issues herein, it must first be determined whether the church pews in question are "fixtures" and by

what tests such decision is reached. The rule is well stated in Bastas v. McCurdy, Mo.App., 266 S.W.2d 49, where the court says, l.c. 51:

"[1–3] A fixture is an article of the nature of personal property which has been so annexed to the realty that it is regarded as a part of the land and partakes of the legal incidents of the freehold and belongs to the person owning the land. The term is expressive of the act of annexation and necessarily implies something that has existed apart from realty but which may, by being attached thereto, become a part thereof. Whether an article is a fixture or not depends upon the facts and circumstances of the particular case."

In defining the "elements of a fixture," the court says, l.c. 51:

"[4,5] In the case of Matz v. Miami Club Restaurant, Mo.App., 127 S.W.2d 738, 741, this court stated the well established rule that the 'elements of a "fixture" * * * are commonly said to be annexation, adaption, and intent, with the latter ordinarily of paramount importance, at least in the case of controversies between seller and purchaser, * * where the controlling question is usually that of whether the intention in annexing the article to the realty was to make it a permanent accession to the land.' These elements or tests all present questions of fact and are not ordinarily resolvable by law. Goodwin v. Elleardsville Hall Ass'n, 5 Mo.App. 289."

■ In arriving at the intention with which the annexation was made, the appellants rely on the statements of Pastor Fausett, who was present at the time the pews were installed, to the effect that she anticipated they would be moved to another and larger place and they wanted them to be easily removable. The court, however, is not bound by such testimony. As is said in Bastas v. McCurdy, supra, 266 S.W.2d l.c. 51–52:

"[6,7] In determining the intention of the person making the annexation the court or jury is not bound by his testimony on this point, nor by his secret or undisclosed purpose but may decide this issue from his acts and conduct and the surrounding facts and circumstances. Security Stove & Mfg. Co. v. Stevens, 222 Mo.App. 1029, 9 S.W.2d 808. It necessarily follows that there need not be any direct testimony on the question of intent as the jury may make its finding on this issue from a consideration of the facts and circumstances in evidence."

■ Upon the record here, the court finds that it was the intention that the pews become a part of the church building. They were built for this church and installed therein to be a part of and complete the church. They were bolted to the floor in such manner that their removal damaged the floor of the building. The respondent is not charged with the secret and undisclosed intention of Pastor Fausett. From the surrounding facts and circumstances, the court finds that these pews were intended to become a permanent part of the building.

In Tyler v. White, 68 Mo.App. 607, the court held that a heating apparatus installed in a dwelling house became a permanent part of real estate and passed to the subsequent mortgagee. The court announces the rule as follows, l.c. 610–611:

" 'But as between vendor and vendee, heir and executor, or administrator and mortgagor and mortgagee, there is no such indulgence toward him who annexes personal property to the land; a much stricter rule applies, and the presumption is the contrary of that given to the tenant. For it will there be presumed that the owner of the land intended the improvement as an accessory to the inheritance and as a lasting benefit thereto. It will not be presumed that the owner of the fee intended the work as a mere temporary improvement, to be by him taken away in case he should sell the land, or

to be removed in case the mortgage should foreclose.

" 'Under the old law, the principal test as to what was or was not a fixture, was said to be the nature of the physical attachment to the soil. But this theory has long since been exploded. "And while courts still refer to the character of the annexation as one element in determining whether an article is a fixture, greater stress is laid upon the nature and adaptation of the article annexed, the uses and purposes to which" the land "is appropriated at the time the annexation is made, and the relations of the party making it to the property in question, as settling that a permanent accession to the freehold was intended to be made by the annexation of the article." 1 Wash. Real Property [5 Ed.], p. 22.'

"Looking now at the 'nature and adaptation' of the heating apparatus annexed to her dwelling by Mrs. Tyler as well as 'the relations of the party making it,' and are we not bound, as said by Mr. Washburn, to regard these 'as settling that a permanent accession to the freehold was intended.' It matters not that she may declare that she, in her own mind, intended these improvements as *temporary*, and that she intended some day to remove them. We may answer, as was said in Snedeker v. Warring (2 Kern, N.Y. 170), that her secret intention in that respect can have no legitimate bearing on the question. Her acts clearly indicated an intention to make the heating apparatus a permanent accession to the dwelling and therefore to the real estate * * *."

In Stockton v. Tester, Mo.App., 273 S. W.2d 783, the chattel mortgagee brought an action against the landlords to replevy certain articles installed in a locker plant. The landlords counterclaimed for wrongful removal of certain Jamison doors and beef tracking. The trial court found that the Jamison doors and tracking belonged to the landlord. In affirming the case, this court said, l.c. 786–787:

"[4–8] We think the testimony of Tester in respect to such claimed agreement was not and is not the determining factor on the question as to whether the articles had been annexed to and become a part of the freehold. The elements in making such determination are usually said to be those of Annexation, Adaption and Intent. As between landlord and tenant and where the rights of third parties do not intervene, the intent is of paramount importance. But as between the owner of the building and creditors of the lessee it is of only coincidental importance and the question must be determined with more emphasis on the character of annexation and the uses to which the property is put. 2 Tiffany on Landlord and Tenant, sec. 240, p. 1572; Matz v. Miami Club Restaurant, Mo. App., 127 S.W.2d 738; Cunningham v. Von Mayes and Stubblefield, 194 Mo. App. 56, 182 S.W. 1059; Kelvinator St. Louis, Inc. v. Schader, 225 Mo.App. 479, 39 S.W.2d 385; Glueck & Co. v. Powell, 227 Mo.App. 1226, 61 S.W.2d 406; Esther v. Burke, 139 Mo.App. 267, 123 S.W. 72. Any secret intention or agreement not known to innocent purchasers or mortgagees should not be considered. However, the intention to annex may be and often is inferred from the circumstances surrounding the annexation, adaption and usage of the article.

\*       \*       \*       \*       \*       \*

"[9–11] Articles annexed to realty by a tenant for the purpose of carrying on a trade or business are considered as trade fixtures and are ordinarily removable by him. That the fixture is particularly adapted to a particular type of building does not (in itself) make it irremovable. If the article is placed in the building for the sole purpose of enabling the tenant to carry on his business, it is removable; *but if the article is so placed as to make the building itself peculiarly adapted and more usable for the type of business, then it is not removable.* 36 C.J.S., Fixtures, § 38, p. 973; Red Dia-

mond Clothing Co. v. Steidemann, 169 Mo.App. 306, 152 S.W. 609; Banner Iron Works v. Aetna Iron Works, 143 Mo.App. 1, loc. cit. 6, 122 S.W. 762; Manufacturers Bank & Trust Co. of St. Louis v. Lauchli, 8 Cir., 118 F.2d 607; Glueck & Co. v. Powell, supra; Kelvinator St. Louis, Inc. v. Schader, supra." (Italics ours)

The building involved here was a new building, designed, built and equipped to be used as a church. The pews were made at the furniture factory at the School of the Ozarks for this church. They were used to make the *building itself* peculiarly adapted and more usable for the type of business, to wit: a church, a church without pews not having come into use as yet.

In Rogers v. Crow, 40 Mo. 91, in the erection of a church, a recess was left to receive an organ, which was required to complete the design and finish of the building, the organ being attached to the floor and intended to be permanent. The court held that the organ was to be considered as affixed to the freehold and passed, as between vendor and vendee, by a sale of the realty. The court said, l.c. 96–97:

"In the building of the church, a space or recess was purposely left to be exclusively appropriated to the reception of an organ; that part of the building was left incomplete, and was never finished till the organ was put in position. This was necessary to give that part of the house perfection, symmetry, and make it conform to the intention and uses had in view when it was erected. Architecturally it was incomplete till the organ was fitted and fastened, and the workmen closed their labors hiding the unfinished walls in the rear. The character or permanency of the annexation in this particular case can have no controlling or preponderating weight. Upon an examination of the design, use and adaptability, the evidence of intention was manifest and unmistakable, and the purchaser had a right to be governed by these considerations in regarding it as a fixture.

In the execution of the deed of trust, the grantors made no reservation, and it must be presumed that they intended every thing should pass by their deed that was annexed to the realty and stand pledged as a security for the debt. Under all the circumstances, we are of the opinion that the organ was a fixture and formed parcel of the realty, and as such is rightfully the property of the grantees."

■ There was a deed of trust on this church property and it was by reason of the foreclosure of that deed of trust that the respondent became the owner of the church pews. It is immaterial whether the pews were installed before or after the execution of the deed of trust. They were bolted to and attached to the church building at the time of the foreclosure of the deed of trust and the purchase of the building by the respondent. As is said in Union Central Life Ins. Co. v. Tillery, 152 Mo. 421, 425, 54 S.W. 220, 221:

"* * * Thus, in Curry v. Schmidt, 54 Mo. 515 [l.c. 517], it was said: 'So, if a mortgagor erects improvements or attaches fixtures to the mortgaged premises, they become the property of the mortgagee for the payment of his debt. Butler v. Page, 7 Metc. (Mass.) 40. And if, at the time of a sale under a deed of trust, the fixtures are attached, they pass by the sale, and, if removed after the sale and before a deed is made, replevin will lie by the purchaser,' —citing Sands v. Pfeiffer, 10 Cal. 258; Cohen v. Kyler, 27 Mo. 122."

(The same doctrine is announced in annotations at 41 A.L.R. 601, 88 A.L.R. 1114 and 99 A.L.R. 144.)

■ The trial court found the issues in favor of respondent and against the appellants. We find that there is sufficient substantial evidence in the record to support the judgment of the lower court. The elements of Annexation, Adaption and Intent have been sufficiently established to make the pews a part of the church real

estate. As purchaser at the foreclosure of the deed of trust on the church building, respondent is entitled to the pews attached thereto. The sum of $1,800 is a fair evaluation of respondent's damages.

Affirmed.

HOGAN, P. J., and STONE, and TITUS, JJ., concur.